25CA1617 Circle K v C and C Denver 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1617
City and County of Denver District Court No. 24CV33687
Honorable Ian J. Kellogg, Judge

---

Circle K Stores, Inc., a Texas corporation,

Plaintiff-Appellant,

v.

City and County of Denver, a political subdivision of the State of Colorado by and through the Department of Excise and Licenses n/k/a the Department of Licensing and Consumer Protection; and Molly Duplechian in her official capacity as Executive Director of the Department of Excise and Licenses n/k/a the Department of Licensing and Consumer Protection,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Grove and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

Haynes and Boone, LLP, Brent R. Owen, Michael Freyberg, Denver, Colorado, for Plaintiff-Appellant

Miko Brown, City Attorney, Hayley Swestka, Assistant City Attorney, Brandy Dijette-Pierce, Assistant City Attorney, Denver, Colorado, for Defendants-Appellees

¶ 1    Plaintiff, Circle K Stores, Inc. (Circle K), submitted applications to the Denver Department of Excise and Licenses (the Department) to sell tobacco products inside a convenience store located in Denver or, alternatively, at a kiosk on the far edge of the store's lot. After the Department issued orders rejecting both applications based on the store's proximity to a school, Circle K brought this action for judicial review of the second order of denial.[1]  The district court rejected Circle K's claims.  We affirm.

## I.    Background

¶ 2    Circle K operates a convenience store on Tower Road in Denver.  About a block away, a high school leases a portion of a building; another part of that same building serves as a commercial warehouse.  The relative locations of the buildings are shown in the Google Maps image below.

---

[1] The named defendants are the City and County of Denver and Molly Duplechian in her official capacity as Executive Director of the Department of Excise and Licenses, now known as the Department of Licensing and Consumer Protection.



Aerial View of Tower Rd and N Argonne St

¶ 3    The Circle K store is located on the corner lot on the lower left (southwest) corner of the image.  The school and warehouse share the left of the two buildings visible on the lot on the upper right (northeast) corner of the image.  The school occupies roughly the northern seventy-five percent of that building, and the warehouse

occupies roughly the southern twenty-five percent. The school has dedicated parking spaces, which are directly in front of the school on the western and northern sides. (Circle K seems to assume that the parking spaces in front of the warehouse on the western and southern sides are specifically allocated to the warehouse, but that's not clear from the record.)

¶ 4    Circle K submitted an application to sell tobacco from its store under Denver Revised Municipal Code (DRMC) section 24-420, which requires a license to operate a retail tobacco store in Denver. The Department issued an order denying the application under DRMC section 24-422(b)(1)(a), which provides that

> an application for a retail tobacco store license shall be denied . . . if . . . [t]he applicant's proposed location is within one thousand (1,000) feet of . . . [a]ny school, with the distance computed by direct measurement in a straight line from the nearest property line of the land used for the school to the nearest portion of the building in which the retail tobacco store is proposed to be located.

Specifically, the Department determined that the store was within 1,000 feet of the school. Circle K requested an appeal hearing but later withdrew its request to pursue a revised application.

¶ 5     In its revised application, Circle K sought to sell tobacco not in the store itself but in a kiosk that would be constructed on the southwest corner of the lot (the small red rectangle near the lower left corner of the Google Maps image).  The Department issued an order denying that application on the basis that the proposed sale location was still within 1,000 feet of the school.

¶ 6     Rather than request an appeal hearing, Circle K filed a complaint, seeking judicial review of the Department's second order of denial under C.R.C.P. 106(a)(4) and a declaratory judgment that the Department was applying the wrong starting and ending points in its distance calculations.  After full briefing, the district court rejected Circle K's claims.  This appeal followed.

## II.     Standard of Review

¶ 7     C.R.C.P. 106(a)(4) provides a mechanism to obtain review of a quasi-judicial decision by a governmental body in a civil matter where the law otherwise provides no other plain, speedy, and adequate remedy.  *Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 1.

¶ 8     In an appeal from a judgment entered under Rule 106(a)(4), we review the decision of the governmental body itself, rather than that of the district court.  *Hajek v. Bd. of Cnty. Comm'rs*, 2020 COA 28,

¶ 6.  Accordingly, our review is de novo.  *Whitelaw v. Denv. City Council*, 2017 COA 47, ¶ 8.  Our review is limited to determining whether the governmental body exceeded its jurisdiction or abused its discretion.  C.R.C.P. 106(a)(4)(I); *Brown*, ¶ 1.  A governmental body abuses its discretion if it misconstrues or misapplies the law or if its decision is not reasonably supported by any competent evidence in the record, such that its decision can only be explained as an arbitrary and capricious exercise of authority.  *Yakutat Land Corp. v. Langer*, 2020 CO 30, ¶ 21.

¶ 9      We likewise apply de novo review to the interpretation of a city code, utilizing ordinary rules of statutory construction.  *Alpenhof, LLC v. City of Ouray*, 2013 COA 9, ¶ 10; *see also Nash v. Mikesell*, 2024 COA 68, ¶ 15 (applying de novo review to a declaratory judgment claim based on statutory interpretation).  Our primary goal in interpreting a city code is to determine and effectuate the drafters' intent, which we discern by giving the words and phrases their plain and ordinary meanings.  *Martinez v. Cast, LLC*, 2025 COA 32, ¶ 29.  We also look to the entire legislative scheme so as to give consistent, harmonious, and sensible effect to all of its parts.  *Id.*  But we may defer to an interpretation by the governmental body

charged with administering the code, so long as that interpretation is reasonable. *Whitelaw*, ¶ 57; *Alpenhof*, ¶ 10.

### III.   Exhaustion Requirement

¶ 10    As an initial matter, we must ensure that we have jurisdiction to consider this appeal. *See Nguyen v. Lai*, 2022 COA 141, ¶ 8.

¶ 11    In the district court, defendants argued that the court lacked subject matter jurisdiction over this case because Circle K didn't exhaust its available administrative remedies before seeking judicial review. *See People v. Abdul-Rahman*, 2026 CO 33, ¶ 12. The district court rejected that argument, determining that Circle K was not required to pursue an appeal hearing on its second application before seeking judicial review. The court relied largely on the following language from the Department's second order of denial:

> Any applicant whose application has been denied shall be entitled to a hearing upon written request to the Director. The Applicant shall have ten (10) calendar days from the mailing of this Order of Denial to request a hearing. *This Order shall constitute a final agency action subject to judicial review in Denver District Court if an appeal request is not received within ten (10) calendar days from the mailing date of this Order.*

(Emphasis added.) The court reasoned that the italicized language plainly and unambiguously provides that there is no exhaustion requirement and that nothing in the DRMC or the Department's hearing rules provides otherwise.

¶ 12 Defendants note their disagreement with the district court's resolution of this issue, but they don't develop any argument challenging it. We agree with the district court's decision and therefore conclude that we have jurisdiction over the appeal.

IV. Analysis

¶ 13 Circle K challenges two aspects of the Department's application of DRMC section 24-422(b)(1)(a) in its second order of denial. First, Circle K contends that when drawing a line to measure the distance between the school and the location where tobacco would be sold, the Department used the wrong starting point — using the nearest property line of the land used for the school and warehouse rather than using the portion of that property actually leased to and used by the school. And second, Circle K contends that the Department used the wrong ending point for that line — using the location of the store rather than the kiosk.

7

¶ 14    We address only the first contention because we conclude that the Department did not abuse its discretion by starting the measurement at the school's property line or by concluding that the entire Circle K lot lies within 1,000 feet of that starting point.  Thus, the Department didn't abuse its discretion by concluding that there was no place on the Circle K lot that would meet the distance requirement to qualify for a retail tobacco store license.

¶ 15    Recall that section 24-422(b)(1)(a) of the DRMC provides that in determining whether a proposed location is within 1,000 feet of a school, the distance is computed by measuring a straight line from "the nearest property line of the land used for the school to the nearest portion of the building in which the retail tobacco store is proposed to be located."  The Department measured starting at the property line of the lot on which the school is located.

¶ 16    Circle K argues, however, that the starting point must be the precise part of the property actually leased to and used by the school.  Circle K observes that the warehouse and its adjacent parking spaces occupy the corner of the parking lot that is nearest to Circle K's lot.  Thus, by starting its measurement from the property line — rather than from somewhere within the school's

leasehold — the Department included in its calculation parts of the property that are used as a warehouse rather than using only those parts that are used for a school.

¶ 17    But the Department's interpretation of the relevant language — "the nearest property line of the land used for the school" — is a reasonable one. The Department treats a "property line" as a line demarcating the legal boundary between two parcels of real property that may be owned by different persons.

¶ 18    This interpretation makes sense. Notably, section 24-422(b)(1)(a) uses different language to pinpoint the beginning and the end of a distance measurement. The beginning point is "the nearest property line of the land used for the school," while the ending point is "the nearest portion of the building in which the retail tobacco store is proposed to be located." One part relies on the nearest "property line" while the other relies on the nearest "portion of the building," signifying that a "property line" is not the same thing as a "portion of [a] building" where an activity occurs. The drafters could have used the same language for both ends of the line, but they chose not to, and it is reasonable to give some significance to that choice. *See People v. Burgandine*, 2020 COA

142, ¶ 18 (we generally presume that when drafters of legislative enactments use different words, they intend for each to mean something different).

¶ 19    Moreover, the Department's interpretation is consistent with the definition of "property line" in a different chapter of the DRMC governing noise control. For purposes of that chapter, "property line" is defined as "that real or imaginary line . . . that separates real property owned or controlled by any person from contiguous real property owned or controlled by another person." DRMC § 36-2(23). The definition further provides that "[t]he vertical and horizontal boundaries of a single unit in a multi-unit building . . . shall not be considered property lines separating one (1) premises from another" and "[t]he vertical and horizontal boundaries separating one (1) building from another building within the same parcel of real property owned or controlled by a person shall not be considered property lines separating one (1) premises from another." *Id.* Although there is no definition of "property line" in the tobacco chapter of the DRMC, it makes sense to interpret the same term in a similar way in different provisions of the code. *See Martinez,* ¶ 29; *see also Dodge v. Padilla,* 2023 COA 67, ¶ 21

(interpreting a term in one Colorado statute in a manner consistent with how that term is defined in other Colorado statutes). And under that definition, any borders separating the buildings or parts of buildings used by the school, the warehouse, and any other establishments on the same parcel of land do not constitute property boundaries; rather, the only property boundary is the one separating that entire parcel of property from other parcels.

¶ 20 The Department's interpretation is also consistent with how Colorado courts generally interpret the term "property line" as a line separating an entire parcel of property from another parcel. *See, e.g., Love v. Klosky*, 2018 CO 20, ¶¶ 3, 28-44 (considering what happens when trees cross residential property lines); *Trujillo v. Reg'l Transp. Dist.*, 2018 COA 182, ¶¶ 9-17 (considering the Colorado Governmental Immunity Act's definition of a "sidewalk," which references property lines); *Glatz v. City & County of Denver*, 735 P.2d 899, 900-01 (Colo. App. 1986) (considering regulations requiring structures to be set back a certain distance from property lines).

¶ 21 Finally, the Department's interpretation is consistent with Colorado courts' treatment of the term "property line" in other cases

addressing proximity to schools. For instance, in *Mariscos Las Islitas, Inc. v. Gonzales*, a division of this court interpreted the predecessor of section 44-3-313(1)(d)(I), C.R.S. 2025, which required establishments seeking liquor licenses to be more than five hundred feet from a school. 122 P.3d 1082, 1083-85 (Colo. App. 2005) (citing § 12-47-313, C.R.S. 2005). Much like the language at issue here, the statute at issue in *Mariscos* required the distance calculation to be made by measuring "from the nearest property line of the land used for school purposes to the nearest portion of the building in which liquor is to be sold." § 44-3-313(1)(d)(II). But the difference was added language providing that the measurement must be made "using a route of direct pedestrian access." *Id.* Applying that language, the division considered two potential points at which the measurement could start, and it ultimately selected one; as relevant here, both of those points were along the school property line. *Mariscos*, 122 P.3d at 1084-85; *see also Moschetti v. Liquor Licensing Auth.*, 490 P.2d 299, 301-02 (Colo. 1971) (considering the location of a school's property line in interpreting similar language); *Geer v. Rabinoff*, 328 P.2d 375, 375-76 (Colo. 1958) (same).

12

¶ 22    Circle K nonetheless contends that the Department's interpretation is inconsistent with the division's decision in *La Loma, Inc. v. City & County of Denver*, 572 P.2d 1219 (Colo. App. 1977). We disagree. The division in *La Loma* interpreted an even earlier version of section 44-3-313(1)(d) — the same statute at issue in *Mariscos*. *See La Loma*, 572 P.2d at 1220 (citing § 12-47-139, C.R.S. 1973). The division concluded that the statute prohibited the issuance of a liquor license to an establishment that was located within five hundred feet of a parcel of property used as a school athletic field, even though the field was several blocks from and not contiguous with the school itself. *Id.* Circle K claims that by doing so, the division effectively held that calculations must measure from *property used for school purposes*, as opposed to from *a property boundary*. To the contrary, the division didn't ignore the statutory language regarding property lines; it merely held that in determining what parcels of property to consider, property used for a school purpose is deemed to be part of a school. *See id.*

¶ 23    We also are not persuaded by Circle K's reliance on a case from New Mexico, which, in applying similar statutory language prohibiting the issuance of liquor licenses to establishments within

13

three hundred feet of a school (measured from the school's property line), adopted a "functional" rather than a "literal" meaning of the word "school." *Regents of Univ. of N.M. v. Hughes*, 838 P.2d 458, 458-59, 466 (N.M. 1992). Thus, rather than applying the statute to prohibit a liquor license within three hundred feet of the property line of any property owned by a school, the court looked to the purpose for which the portion of the school-owned property that was close to the proposed establishment was used and determined that it wasn't used for school purposes. *Id.* at 465-67.

¶ 24    As an initial matter, the case is from New Mexico; and Circle K hasn't cited, and we haven't found, any Colorado cases consistent with it. Also, the case interpreted a state statute, *see id.*, rather than, as here, assessing the reasonableness of an interpretation by a governmental entity charged with administering its own code, *see Whitelaw*, ¶ 57; *Alpenhof*, ¶ 10. And finally, the property at issue in that case was a university campus that spanned several hundred acres in the middle of a metropolitan area and was bisected by a major highway. *Hughes*, 838 P.2d at 459. It was in that context that the court held the statute didn't prohibit the issuance of a liquor license to an establishment that was located within three

hundred feet of a parking lot on the university campus serving a maintenance facility. *Id.* at 459, 466-67. That is far different than prohibiting the issuance of a license within a certain proximity to a parcel of property that spans only a portion of a city block.

¶ 25 Indeed, the facts of this case demonstrate why it makes sense to use the property line rather than attempting to determine exactly what part of a property is being used by a school. In its applications, Circle K proposed measuring the distance starting from a point somewhat north of the mid-point of the school and warehouse building. But the record indicates that the school leased roughly the northern seventy-five percent of the building, as well as the adjacent parking lot, so the actual space used by the school was closer than what Circle K had calculated. It's also unclear whether administrators, teachers, students, and other school personnel were using only those parking spaces directly in front of the part of the building leased by the school or whether the parking spaces closer to the warehouse part of the building were unmarked and potentially used by anyone. And under the lease, the landlord has the right to require oversized vehicles (which might include buses) to use "substitute parking spaces" designated by the landlord

15

elsewhere on the property. Thus, it would be very difficult — if not impossible — to determine the precise portion of the property where the school use began.

¶ 26    Because the Department's interpretation is a reasonable one, we defer to it. *See Whitelaw*, ¶ 57; *Alpenhof*, ¶ 10. Under that interpretation, it is immaterial that different parts of the same parcel of property were leased for a school and for a warehouse. Instead, we look only to the property line that demarcates the legal boundary between that entire parcel and the neighboring parcels.

¶ 27    Using the property line, the Department determined that "the entire plot of the property" where the Circle K is located is within 1,000 feet of the school. This determination is supported by evidence in the record — specifically, the Department's letter detailing its proximity review and calculations and its map displaying a 1,000 foot circle around the school property and including the entire Circle K lot within the scope of that circle. To the extent that Circle K questions how the measurements were made, it could have pressed that issue during a hearing had it sought one before seeking judicial review, but it opted to proceed without a hearing. Having done so, it is confined, as are we, to the

16

limited administrative record. *See Prairie Dog Advocs. v. City of Lakewood*, 20 P.3d 1203, 1206 (Colo. App. 2000).

¶ 28 Accordingly, we conclude that the district court properly rejected Circle K's claim seeking judicial review of the Department's second order of denial. We likewise conclude that the district court properly rejected Circle K's declaratory judgment claim because (1) we have determined that the Department was entitled to start its measurement from the property line of the lot on which the school sits and (2) it doesn't matter where on the property the measurement should've ended because the entire Circle K property lies within 1,000 feet of the starting point. We therefore affirm the district court's judgment rejecting both claims.

## V. Disposition

¶ 29 The judgment is affirmed.

JUDGE GROVE and JUDGE MOULTRIE concur.